NEW MILFORD SAVINGS BANK *v.*
MAURICE J. JAJER ET AL.
(AC 14888)

O'Connell, C. J., and Hennessy and Dupont, Js.

Argued November 3, 1998—officially released March 2, 1999

*George M. Purtill*, with whom was *Seth Jacoby*, for the appellants (named defendant et al.).

*Kenneth J. Bartschi*, with whom were *Wesley W. Horton* and, on the brief, *Michael J. Mannion*, for the appellee (plaintiff).

*Opinion*

DUPONT, J. This case comes to us on remand from our Supreme Court. *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 708 A.2d 1378 (1998). The defendants Maurice J. Jajer and Maria Jajer (defendants) previously appealed to this court from the trial court's granting of the plaintiff's motion to open the 1994 judgment of strict foreclosure, from the judgment of strict foreclosure dated May 15, 1995, and from the denial of their motion to open the 1995 judgment. We reversed the judgment of the trial court on the grounds that, pursuant to General Statutes § 49-15, the trial court lacked jurisdiction to open the 1994 judgment of strict foreclosure after title had vested in the foreclosing mortgagee with respect to any part of the mortgaged property, and because General Statutes § 49-1 barred any further action on the mortgage debt after the mortgage had been foreclosed. *New Milford Savings Bank* v. *Jajer*, 44 Conn. App. 588, 594, 691 A.2d 598 (1997). Our Supreme Court reversed our decision, concluding that § 49-15 did not deprive the trial court of jurisdiction to open the judgment of strict foreclosure and that § 49-1 did not bar the plaintiff's access to equitable foreclosure proceedings, and remanded the case to us with direction to consider the defendants' remaining claims.[1] *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 264–65.

The defendants' remaining claims are that the trial court (1) lacked jurisdiction to open the 1994 foreclosure judgment because the plaintiff's motion to open the judgment did not comply with the Bankruptcy Court's order modifying the automatic stay, (2) improperly rendered the 1995 judgment of strict foreclosure because

[1] The original panel of judges in *New Milford Savings Bank* v. *Jajer*, supra, 44 Conn. App. 588, included Judge Maxwell Heiman, who was deceased at the time the remand was issued. The appeal was therefore reargued before a new panel.

the trial court should have stayed the proceedings pursuant to General Statutes § 52-235b and because the time allowed for the defendants to plead had not yet expired when the plaintiff filed its motion for judgment and (3) improperly denied the defendants' motion to open the 1995 judgment of strict foreclosure.[2]

The relevant facts are stated in both *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 251, and *New Milford Savings Bank* v. *Jajer*, supra, 44 Conn. App. 588. Additional facts relevant to this appeal will be set forth as we address the defendants' remaining claims.

## I

The defendants first claim that the trial court improperly opened the 1994 judgment of strict foreclosure because the plaintiff's motion to open the judgment exceeded the scope of the Bankruptcy Court's order. We are not persuaded.

The trial court rendered the original judgment of strict foreclosure on August 22, 1994, and, when the

---

[2] The defendants' third claim is subsumed in the second issue and need not be separately discussed. We also note that the defendants claim that the trial court's judgment of strict foreclosure was not a final judgment because essential elements, such as the amount of the debt, value of the property, fees and costs, and the setting of law days, were not determined and that, therefore, the appeal should be dismissed. Unlike in *Essex Savings Bank* v. *Frimberger*, 26 Conn. App. 80, 597 A.2d 1289 (1991), the plaintiff here sought to foreclose on only the third of three parcels at issue, leaving all other terms the same as in the prior foreclosure proceeding, which had found the necessary elements for a final judgment. The trial court in this case set new law days. Although the trial court did not award attorney's fees, either in the original foreclosure of the two parcels or in the foreclosure that included the third parcel, that fact does not deprive an appellate court of jurisdiction over an appeal that is otherwise final. *Benvenuto* v. *Mahajan*, 245 Conn. 495, 715 A.2d 743 (1998). Even if the actual value and debt amount are no longer as found in the original foreclosure action, dismissal is not warranted because the lack of a factually correct finding does not affect the finality of a judgment for appeal purposes. Because we must remand this case, the trial court will have an opportunity to reexamine, if necessary, the findings made in the original foreclosure action.

defendants failed to redeem on their law day, title vested in the plaintiff on September 23, 1994. On September 26, 1994, the defendants filed a chapter 11 bankruptcy petition, and the underlying proceedings in the trial court were automatically stayed.[3] Soon thereafter, the plaintiff discovered that the property description in the foreclosure complaint did not include the entire property described in the mortgage deed, because one of three mortgaged parcels of land had been omitted.

On October 5, 1994, the plaintiff filed a motion in the United States Bankruptcy Court seeking relief from the automatic stay in order to foreclose the defendants' interest in the third parcel that had been omitted from the foreclosure action. A hearing was held and on February 23, 1995, the Bankruptcy Court, Krechevsky, J., issued a memorandum of decision and an order modifying the stay. In the memorandum of decision, the court stated that "[t]he bank has a colorable claim to the parcel and is entitled to relief from the stay to take *whatever action* is appropriate in state court under the circumstances." (Emphasis added.)

Thereafter, on March 10, 1995, the plaintiff filed a motion in the trial court to open the judgment of strict foreclosure in order to amend the complaint to contain a description of the omitted third parcel. The plaintiff requested that the trial court assign new law days with respect to the third parcel only. The plaintiff's motion was granted, and on April 12, 1995, the plaintiff filed an amended complaint in which the plaintiff included a description of the third parcel of land, as well as a description of the two original parcels.

The defendants claim that the trial court improperly granted the plaintiff's motion to open the 1994 foreclosure judgment in violation of the Bankruptcy Court's

[3] "The filing of a petition in bankruptcy operates as a stay of the 'commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the

order. Specifically, the defendants claim that the order lifting the automatic stay was limited to allowing the plaintiff to "prosecute a supplemental action concerning the mortgage dated March 10, 1987." The defendants maintain that the opening of the entire judgment and the filing of an amended complaint to include a description of all three parcels does not constitute a "supplemental action" within the meaning of the order. Because all actions taken in violation of an automatic stay of the Bankruptcy Court are void, the defendants argue that the trial court was without jurisdiction to act and, therefore, its decision to open the judgment of foreclosure was void.

We first note that "[t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws." (Internal quotation marks omitted.) *Citicorp Mortgage, Inc.* v. *Mehta,* 39 Conn. App. 822, 826, 668 A.2d 729 (1995). The Bankruptcy Court, however, is authorized to grant a creditor relief from the stay "for cause by terminating, annulling, modifying, or conditioning the stay." Id., 827. "The terms of an order modifying an automatic stay must be strictly construed because a stay under § 362 [of the Bankruptcy Code] freezes in place all proceedings against the debtor and his property. . . . [B]ecause a section 362 stay freezes in place all proceedings against the debtor, and because only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of any proceeding can derive legitimacy only from the bankruptcy court order. The terms of an order modifying the automatic stay must therefore be strictly construed." (Citation omitted; internal quotation marks omitted.) Id., 827–28.

The order in the present case modified the stay to permit the plaintiff to "proceed in state court to prosecute a supplemental action concerning the mortgage dated March 19, 1987." The order, however, incorporated the memorandum of decision, in which the court stated that the plaintiff was "entitled to relief from the stay to take *whatever* action is appropriate" under the circumstances. (Emphasis added.) Our Supreme Court noted this difference, stating that "[i]n its formal order modifying the stay, the Bankruptcy Court referred to its memorandum of decision but described its order somewhat differently." *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 254 n.5.

Strictly construing the order modifying the stay, as we must, we cannot conclude that the trial court's opening of the 1994 foreclosure judgment for the purpose of amending the complaint to include the third parcel was done in violation of that order. The order lifting the stay was rendered "in accordance" with the memorandum of decision and the order itself did not specifically limit the "supplemental action" to the third parcel. The defendants' reliance on the term "supplemental action" to support their claim of the limited scope of the order is misplaced. In rendering the order, the Bankruptcy Court expressly stated that the plaintiff was entitled to take "whatever action" was appropriate under the circumstances.

## II

The defendants next claim that the trial court improperly entered the May 15, 1995 judgment of strict foreclosure because (1) the defendants' counsel was absent from court due to his own suspension hearing and, therefore, the trial court should have stayed the foreclosure proceedings pursuant to General Statutes § 52-235b[4] and (2) on the date of the filing of the motion for

---

[4] General Statutes § 52-235b provides: "If, prior to judgment, an attorney for any reason ceases to be a member of the bar or becomes physically or

judgment, the defendants had not been defaulted and were not yet required to plead in accordance with Practice Book § 10-61. We will address the defendants' claims in turn.

## A

The defendants claim that the trial court improperly rendered the judgment of strict foreclosure on May 15, 1995, in violation of § 52-235b. We agree.

The following additional facts are necessary to our resolution of this claim. In April, 1995, the defendants' former attorney, Richard Greenspan, pleaded guilty to a felony charge unrelated to this case. Greenspan had been summoned to appear in the Hartford Superior Court on Monday, May 15, 1995, in a proceeding in which the statewide grievance committee sought to suspend his right to practice law pending his sentencing in a federal criminal matter. Because the suspension hearing was scheduled for the same day that the trial court was scheduled to hear the plaintiff's motion for judgment in this case in the Litchfield Superior Court, the defendants' counsel did not appear at the hearing on the motion for judgment. According to the defendants, Greenspan informed the plaintiff's counsel on Thursday, May 11, 1995, that he was unable to attend the hearing and the circumstances that prevented his attendance. Greenspan also filed an objection to the plaintiff's motion for judgment on Friday, May 12, 1995, in which he requested that the trial court deny the plaintiff's motion in order to permit the defendants reasonable time to obtain new counsel and to file the appropriate pleadings. At the May 15, 1995 hearing,

mentally incapacitated or otherwise disabled so as to prevent him from appearing in court in an action in which he has appeared for a client, further proceedings shall not be taken in the action against the client, without leave of the court, until thirty days after notice to appear in person or by another attorney has been served upon the client either personally or in such manner as the court directs."

however, the trial court granted the plaintiff's motion for judgment of strict foreclosure and set the law days.[5]

The defendants claim that although their attorney had not been suspended from the practice of law as of May 15, 1995, he was in the process of being disbarred and was "otherwise disabled" within the meaning of § 52-235b. The defendants claim that the suspension of

---

[5] The following colloquy between the trial court and the plaintiff's counsel took place at the hearing:

"[Plaintiff's Counsel]: For the record, Tom Allingham for the plaintiff. This is a motion for judgment on the amended complaint. The amended complaint was filed in error in the legal description of the original complaint. Judgment previously entered on the original complaint. We are asking the court to render judgment now and incorporate the same terms previously found.

"The Clerk: Your Honor, I received a letter Friday from Attorney Greenspan who at the moment represents the defendants. It is actually an objection to the motion today. Your Honor may wish to read before acting on it.

"The Court: Have you seen this?

"[Plaintiff's Counsel]: Yes, I have, Your Honor. In response to it, I do have a couple of things to say. First thing is that Mr. Greenspan and his clients have been aware of this eventuality for over one month. They have availed themselves to this problem requesting enlargement of time in federal court. I have a pleading dated April 10, which he is asking for additional time in federal court because of this same problem. So they have known for over a month this problem existed. This is a 1992 foreclosure. We have been involved in two bankruptcies. The last bankruptcy is still pending. The parties have already stipulated to certain facts and that bankruptcy where they concede the validity of this mortgage, I believe there is no valid defense. Counsel hasn't filed a defense.

"The Court: You said that he has a right to file an answer to the amended complaint.

"[Plaintiff's Counsel]: He has a right, Your Honor, for some time. Yet he has not done it.

"The Court: He has been defaulted?

"[Plaintiff's Counsel]: Yes, Your Honor.

"The Clerk: As of Friday, defaulted for failure to plead.

"[Plaintiff's Counsel]: He should have responded to it within fifteen days and he did not and he is still not filing an answer.

"The Court: What are you asking to have done today?

"[Plaintiff's Counsel]: The original judgment or judgment now enter on the amended complaint and the law days begin to run.

"The Court: Very well. So ordered."

proceedings due to the disablement of their lawyer as provided by § 52-235b was in effect and, therefore, the order of the trial court granting the plaintiff's motion for judgment was rendered in violation of the stay. The plaintiff counters that because the defendants' counsel was not suspended from the practice of law until two days after the hearing, the thirty day stay afforded by the statute did not apply. Also, the plaintiff claims that even if the defendants' counsel was otherwise disabled under the statute, the trial court had discretion to grant leave to the plaintiff to proceed.[6] The plaintiff also argues that any error in rendering a judgment of strict foreclosure was harmless because the defendants had no meritorious defense.

The issue we must decide is whether the defendants' attorney was otherwise disabled under the statute and if the stay afforded by § 52-235b applies to the facts of this case. This involves the determination of an issue not yet decided by an appellate court of this state. In deciding this issue, we are initially guided by well defined principles of statutory interpretation. "[T]he process of statutory interpretation involves a reasoned search for the intention of the legislature." (Internal quotation marks omitted.) *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 226, 720 A.2d 235 (1998); *State* v. *Albert*, 50 Conn. App. 715, 719, 719 A.2d 1183 (1998), cert. granted on other grounds, 247 Conn. 954, 723 A.2d 810 (1999). "In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history

---

[6] To the extent that § 52-235b affords the trial court any discretion to take action against the defendants in spite of their lawyer's disability, we conclude, on the facts of this case, including those discussed in part II B of this opinion, that any such discretion was abused. Furthermore, there is no indication in the record that the plaintiff asked the trial court to exercise its discretion.

and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . It is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated." (Citations omitted; internal quotation marks omitted.) *Luce* v. *United Technologies Corp.*, 247 Conn. 126, 133, 717 A.2d 747 (1998).

"Moreover, principles of statutory construction require the court to construe a statute in a manner that will not frustrate its intended purpose or lead to an absurd result. *Turner* v. *Turner*, 219 Conn. 703, 712, 595 A.2d 297 (1991). The court must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Internal quotation marks omitted.) *Falco* v. *Institute of Living*, 50 Conn. App. 654, 656–57, 718 A.2d 1009, cert. granted on other grounds, 247 Conn. 948, 723 A.2d 324 (1998).

We begin with the language of the statute itself. General Statutes § 52-235b provides: "If, prior to judgment, an attorney for any reason ceases to be a member of the bar or becomes physically or mentally incapacitated or *otherwise disabled* so as to prevent him from appearing in court in an action in which he has appeared for a client, further proceedings shall not be taken in the action against the client, without leave of the court, until thirty days after notice to appear in person or by another attorney has been served upon the client either personally or in such manner as the court directs." (Emphasis added.)

The statute does not define the term "otherwise disabled." There is no case law construing the words otherwise disabled as used in § 52-235b, and the legislative history sheds no light on its meaning. "If a statute . . .

does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Lauer* v. *Zoning Commission*, 246 Conn. 251, 257, 716 A.2d 840 (1998). The word "otherwise" means "in other respects" or "in other or different circumstances." Random House Dictionary (2d Ed. 1996). While the word "disable" means "[t]o weaken or destroy the normal physical or mental abilities of; incapacitate"; American Heritage Dictionary (2d Ed. 1991); it also means "[t]o make incapable, as of doing a job"; Roget's II, The New Thesaurus (1988).

The plaintiff narrowly reads the words "otherwise disabled" to support its argument that the defendants' counsel was not disabled, in the usual sense of the word, because he was not physically or mentally incapacitated or medically prevented from appearing in court. The statute, however, applies when "an attorney for any reason ceases to be a member of the bar or becomes physically or mentally incapacitated or *otherwise disabled so as to prevent him from appearing in court* . . . ." (Emphasis added.) General Statutes § 52-235b. " 'It is a basic tenet of statutory construction that the intent of the legislature is to be found not in an isolated phrase or sentence but, rather, from the statutory scheme as a whole.' *State* v. *Breton*, 235 Conn. 206, 226, 663 A.2d 1026 (1995). Therefore, '[a] statute should be read as a whole and interpreted so as to give effect to all of its provisions.' *Pintavalle* v. *Valkanos*, 216 Conn. 412, 418, 581 A.2d 1050 (1990) . . . . Furthermore, a statute must be read in light of the purpose it intends to serve." (Citations omitted.) *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 6–7, 675 A.2d 845 (1996).

The phrase "*otherwise* disabled so as to prevent him from appearing in court"; (emphasis added); when read in the context of the entire statute, applies to an attorney who, in respects or circumstances other than physical or mental incapacity is rendered incapable of appearing

in court. To construe the statute otherwise and to limit the phrase only to those who suffer from a physical or mental incapacity or who are medically prevented from appearing in court, would render the phrase meaningless and duplicative of the statutory provision that applies to those who are "physically or mentally incapacitated." "[N]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . ." (Internal quotation marks omitted.) *Groton* v. *Yankee Gas Services Co.*, 224 Conn. 675, 689, 620 A.2d 771 (1993).

Interpreting § 52-235b so as to give effect to all of its provisions; *Pintavalle* v. *Valkanos*, supra, 216 Conn. 418; we conclude that the phrase otherwise disabled as used in the statute is not limited to those who are medically incapacitated. We therefore conclude that the defendants' counsel in the present case, who was in the process of being disbarred and required to attend his own suspension hearing on the same day as the hearing on the plaintiff's motion for judgment, was otherwise disabled as contemplated by the statute.

In so holding, we do not mean to say that every time an attorney has a scheduling conflict regarding court hearings and appearances, the attorney is otherwise disabled and the stay afforded by the statute becomes effective. On the contrary, our holding is limited to the circumstances of this case, and the fact that the defendant's attorney was prevented from appearing in court because he was in the process of being suspended from the practice of law and had to attend his own suspension hearing. This case involves much more than mere negligence or inadvertence on the part of the defendants' counsel. See *Segretario* v. *Stewart-Warner Corp.*, 9 Conn. App. 355, 363, 519 A.2d 76 (1986) (reasonable cause did not exist for setting aside nonsuit because "[t]he failure of counsel's secretary to diary

his appointment is not a valid excuse for the failure of counsel to meet his responsibility to the court to be present at the pretrial with his client" and no mitigating factors beyond counsel's control were presented to court). Here, had defendants' counsel been suspended at the May 12, 1995 hearing, he could not have participated in the hearing on the plaintiff's motion for judgment because an order of the court would have prevented him from practicing law.

Our conclusion is further supported by the legislative purpose of § 52-235b. Section 52-235b is entitled: "Proceedings stayed if attorney unable to appear." The statute was "designed to protect clients whose attorneys cease to be members of the Bar, or become incapacitated. The bill protects them by preventing default judgments from entering against them until the Court permits a default to enter, or until thirty days after actual notice to the client." 13 H.R. Proc., Pt. 11, 1969 Sess., pp. 4964–65. The purpose of the statute would be thwarted if, as in the present case, a default judgment entered against a party whose attorney was unable to appear for a court hearing because he attended his own suspension hearing held the same day, but who was not suspended until two days after that hearing.[7]

---

[7] The plaintiff also argues that even if the trial court improperly rendered the judgment of strict foreclosure, the error was harmless because the defendants did not have any meritorious defense, our Supreme Court having resolved all of the issues raised by the defendants' special defenses against them. Our Supreme Court granted certification limited to the issue: "Did the Appellate Court properly conclude that the trial court lacked jurisdiction to open the judgment of foreclosure based on General Statutes §§ 49-15 and 49-1?" (Internal quotation marks omitted.) *New Milford Savings Bank* v. *Jajer*, supra, 244 Conn. 255. The defendants' special defenses related to §§ 49-15, 49-1 and 49-14. The Supreme Court determined that none of the special defenses, including that based on § 49-14, ousted the trial court of jurisdiction on the facts of this case, *and* remanded the case to this court for the purpose of considering the defendants' remaining claims. That remand would be nullified if we could summarily conclude that the judgment of strict foreclosure was harmless error.

We hold, under the facts of this case, that the thirty day automatic stay provided in the statute was in effect, and the trial court improperly granted the plaintiff's motion for judgment of strict foreclosure in violation of the stay.

## B

The defendants also claim that the trial court improperly rendered the 1995 judgment of foreclosure because the time allowed for the defendants to plead had not expired and the defendants had not been defaulted prior to the time the plaintiff filed its motion for judgment. We agree.

The following additional facts are necessary to address this issue. The plaintiff filed an amended complaint on April 12, 1995. On April 27, 1995, the plaintiff filed a motion for judgment of strict foreclosure on the amended complaint. After the motion for judgment was filed, the plaintiff, on May 12, 1995, filed a motion for default for failure of the defendants to plead, which was granted by the clerk that day. See Practice Book § 17-32, formerly § 363A. A hearing was held on the motion for judgment the following Monday, May 15, 1995, and the motion was granted by the trial court.

Practice Book § 10-8, formerly § 114, provides in relevant part: "Commencing on the return day of the writ, summons and complaint in civil actions, pleadings, including motions and requests addressed to the pleadings, shall first advance within thirty days from the return day, and any subsequent pleadings, motions and requests shall advance at least one step within each successive period of fifteen days from the preceding pleading . . . except that . . . in actions to foreclose a mortgage on real estate the initial time period shall be fifteen days. . . ." Practice Book § 10-61 provides in relevant part: "When any pleading is amended the

adverse party may plead thereto within the time provided by Section 10-8 or, if the adverse party has already pleaded, alter the pleading, if desired, within ten days after such amendment . . . ." Accordingly, the defendants had fifteen days from the filing of the plaintiff's amended complaint, or until April 27, 1995, in which to plead. The defendants did not file an answer to the amended complaint by this time. At the time the plaintiff filed its motion for judgment, fifteen days had elapsed from the filing of the plaintiff's amendment.

Practice Book § 17-32, formerly § 363A, provides in relevant part: "(a) Where a defendant is in default for failure to plead pursuant to Section 10-8, the plaintiff may file a written motion for default which shall be acted on by the clerk upon filing, without placement on the short calendar. (b) If a party who has been defaulted under this section files an answer before a judgment after default has been rendered by the judicial authority, the clerk shall set aside the default. . . ."[8]

In the present case, the plaintiff filed a motion for default on May 12, 1995, and mailed notice to the defendants' attorney who received it on May 15, 1995. The plaintiff filed its motion for judgment on April 27, 1995, prior to the default's being entered, and before a motion for default had been filed. The motion for judgment was granted on May 15, 1995, only three days after notice of the default was sent to the defendants.

On Friday, May 12, 1995, the plaintiff filed a motion for default for failure to plead and the clerk granted the motion. On the same day, the defendant's counsel filed an objection to the plaintiff's motion for judgment

---

[8] At the time the judgment was rendered, § 17-32, formerly § 363A, did not provide, as it does now, that "[a] claim for a hearing in damages or motion for judgment shall not be filed before the expiration of fifteen days from the date of notice of issuance of the default under this subsection."

in which he requested that the trial court give the defendants a reasonable time to obtain new counsel and to file an appropriate pleading. Thus, the court was on notice at the time judgment was rendered on Monday, May 15, 1995, that the defendants, who had been defaulted by clerical action on May 12, 1995, were attempting to invoke the provisions of Practice Book § 363A (b) by filing an answer, which would have entitled them to the clerical action of having the default set aside.

We conclude that the trial court should not have rendered its judgment on May 15, 1995.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.