[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISIONPLAINTIFF'S MOTION FORSUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIM #169.00
This memorandum of decision addresses the question whether defendants in a foreclosure proceeding may maintain an action under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., against the foreclosing bank for actions of its attorney in earlier judicial proceedings in this case. For the reasons stated below, the court holds that no CUTPA action lies here and grants the plaintiff's motion for partial summary judgment.
 I — Facts of the Case
This case has a protracted history. Initially the bank brought a foreclosure action against the defendants based on a mortgage allegedly executed by both defendants. After the court granted a judgment of strict foreclosure on August 22, 1994, the bank noticed that the original foreclosure complaint identified only two parcels of land as securing the mortgage. After the law day had passed, the defendants filed a Chapter 11 bankruptcy petition. Claiming that a third parcel of land had also provided security for the mortgage, the plaintiff obtained relief from the bankruptcy stay allowing it to foreclose the defendants' interest in the third parcel On March 10, 1995, the plaintiff moved to open the judgment of strict foreclosure so that it could file an amended complaint containing a description of the third, omitted parcel as well as the original two parcels. The court granted that motion on March 27, 1995 (Walsh, J.), and the plaintiff filed an amended complaint with respect to all three parcels on April 12, 1995.
On or about April 24, 1995, before the time within which the defendants CT Page 1112-b had to plead had expired and before the defendants had been defaulted, the plaintiff filed a motion for judgment. On May 11, 1995, counsel for the defendants informed plaintiff's counsel that the motion for judgment was premature because a motion for default for failure to plead had not yet been filed. Counsel for the defendants also informed plaintiff's counsel that he would not be present at the hearing on the plaintiff's motion because he was required to be present at a hearing of the Statewide Grievance Committee in Hartford regarding his own disbarment. On May 12, 1995, the defendants' attorney also filed an objection to the plaintiff's motion for judgment and also informed the court that he would be unavailable on May 15, 1995. Also on May 12, 1995, plaintiff's counsel filed a motion for default for failure to plead and the motion was granted on that day.
On May 15, 1995, the court (Pickett, J.) granted the plaintiff's motion for judgment of strict foreclosure on the amended complaint notwithstanding the absence of the defendants' attorney. The defendants' motion to open and set aside the May 15, 1995 judgment was denied on June 5, 1995. The defendants then appealed the May 15, 1995 judgment, whereupon the Appellate Court reversed the decision of the Superior Court on the grounds that General Statutes § 49-15 precludes the opening of a judgment of strict foreclosure once title vests in the mortgagee, thus depriving the trial court of jurisdiction in such matters. In accordance with this finding, the court vacated the judgment of May 15th and reinstated the judgment of August 22, 1994. New Milford Savings Bank v.Jajer, 44 Conn. App. 588, 691 A.2d 598 (1997). The plaintiff appealed that decision to the Supreme Court. The Supreme Court reversed the Court of Appeals on the jurisdictional issue and remanded the case to the Court of Appeals to resolve issues that it had not reached. New Milford SavingsBank v. Jajer, 244 Conn. 251, 708 A.2d 1378 (1998).
On remand, the Court of Appeals found that the trial court had not violated the Bankruptcy Court order in opening the foreclosure. The court further found that the defendants' attorney was "otherwise disabled" within the meaning of General Statutes § 52-235b on the date that the court granted the motion for judgment of strict foreclosure and that the defendants' objection was an answer within the meaning of Practice Book § 363A [b], now § 17-32 [b]. New Milford Savings Bank v. Jajer,52 Conn. App. 69, 726 A.2d 604 (1999).
The case was then remanded to this court whereupon the plaintiff amended its complaint. In response, the defendants have filed an answer denying that the third parcel was ever part of the original mortgage, denying that the defendant Marie Jager ever signed the mortgage and CT Page 1112-c interposing a counterclaim, filed on November 8, 1999, for violations of CUTPA. The plaintiff has moved for summary judgment as to paragraphs 4.A, 4.C, and 4.D of this counterclaim.[1]
Paragraph 4.A alleges that the plaintiff failed to inform the court that it had already obtained title to two of the three parcels and that it failed to give the defendants credit for the value of property in its monetary judgment against the defendants. Paragraph 4.C alleges that the plaintiff proceeded to judgment against the defendants when it knew that their attorney was about to be suspended and would not be present at the hearing. Paragraph 4.D alleges that the plaintiff obtained a default judgment against the defendants that was procedurally improper.
The plaintiff claims, with regard to paragraph 4.A, that each court that has considered this matter was aware that title in the first two parcels had vested in the plaintiff, that the law days assigned by Judge Pickett on May 15, 1995, applied only to the third parcel, and that the plaintiff is not seeking a monetary judgment. As to paragraph 4.C, the plaintiff claims that this court entered the May 15, 1995 judgment notwithstanding the defendants' objection and absence of defendants' counsel. As to paragraph 4.D, the plaintiff again claims that this court was responsible for the procedural error of which the plaintiff complains. The plaintiff relies on the record of this proceeding in support of its motion.
The defendants oppose summary judgment on the ground that whether a practice violates CUTPA is an issue of fact.
 II — Discussion
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49; Miles v. Foley,253 Conn. 381. 385, 752 A.2d 503 (2000). "[A]ny party may move for summary judgment upon any counterclaim. . . ." Practice Book §17-44. "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." Miles v. Foley, supra, 386. "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v.Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988).
In this case, the plaintiffs challenge to the three paragraphs of the CT Page 1112-d counterclaim asserts both that there are no material facts in dispute, based on the affidavits submitted by both parties and the record as a whole, and also that the actions of an attorney do not give rise to a third-party action "unless the third party can point to specific conduct intended to cause specific injury outside of normal contemplation of normal litigation." (Pl.'s Mem. of Law in support of Pl.'s Motion for Summ. J. at 5.) This latter claim, which the court finds dispositive here, amounts to a challenge to the legal sufficiency of the complaint. The legal sufficiency of a complaint may be challenged after the pleadings have been closed by filing a motion for summary judgment.Boucher Agency, Inc. v. Zimmer, 160 Conn. 404, 409, 279 A.2d 540 (1971). Although the Appellate Court in Burke v. Avitabile, 32 Conn. App. 765,772 n. 9, 630 A.2d 624, cert. denied, 228 Conn. 908, 634 A.2d 297
(1993), rejected the use of motions for summary judgment to test the legal sufficiency of a complaint and characterized language in Boucher as "anomalous," a more recent appellate opinion, by a panel which included two of the three judges who issued Burke, has restated that a motion for summary judgment is a proper procedural vehicle to test the legal sufficiency of a complaint. See Drahan v. Board of Education,42 Conn. App. 480, 498 n. 17, 680 A.2d 316, cert. denied, 239 Conn. 921,682 A.2d 1000 (1996). This court joins with the plethora of Superior Court judges holding that summary judgment is an appropriate vehicle to test the legal sufficiency of a complaint. See, e.g., Labroad v.McEleney, Superior Court, judicial district of New Britain, Docket No. 482695 (May 4, 2000, Kocay, J.); ShareAmerica Inc. v. Ernst Young, Superior Court, judicial district of Waterbury, Docket No. 150132 (July 2, 1999, Sheldon, J.); Murphy v. LaChapell, Superior Court, judicial district of Waterbury, Docket No. 142410 (May 23, 1999, Pellegrino, J.) (24 Conn. L. Rptr. 567); Palmieri v. Lee, Superior Court, judicial district of New Haven, Docket No. 405641 (Nov. 24, 1999, Levin, J.)
Whether a practice is unfair and thus violates CUTPA is ordinarily an issue of fact. Thomas River Recycling, Inc. v. Gallo, 50 Conn. App. 767,794, 720 A.2d 242 (1998).[2] The plaintiff's motion, in the present case, differs from the usual summary judgment motion in that there are also issues regarding whether: (1) the acts of the plaintiff's attorney may be imputed to the plaintiff under the facts of this case; and (2) the defendants can maintain a CUTPA action against the plaintiff for the conduct of its attorney in obtaining a judgment against them.
The bank advances no valid reason why the conduct of its attorney in obtaining the earlier judgment may not be imputed to it. The reasons adopted by our Supreme Court for limiting CUTPA claims "by a party against an opponent's attorney do not apply to the instant case, where CT Page 1112-e the Jajers seek to hold their opponent liable for the acts of their attorney.[3] In order for the defendants to maintain an action against the plaintiff for the actions of its attorney, the actions of the plaintiff's attorney must be imputed to the plaintiff. "The general rule is that the acts of an attorney are imputed to a client when they are performed in the furtherance of the business for which the attorney has been retained." Allen v. Nissley, 184 Conn. 539, 542-43, 440 A.2d 231
(1981). The bad faith exception adopted by the court in Allen v. Nissley
to imputing liability for an attorney's conduct to the client does not apply here. Although the Jajers' claims may be construed as charging the bank's attorney with acting in bad faith, the crux of their argument is a classic claim of agency that such bad faith was directed toward them to advance the bank's interests.
The final determining factor to be decided, then, is whether the conduct of the bank's attorney is actionable under CUTPA against the bank. As noted by other courts in similar circumstances, the plaintiff has a constitutional right to pursue its claims against the defendants in a judicial proceeding. The United States Supreme Court has repeatedly treated access to court to redress civil wrongs as a first amendment right. Thus in Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731
(1983), the court overturned a decision of the National Labor Relations Board enjoining an employer's state court action for harassment and libel against a striking employee even if filed for retaliatory reasons and remanded the case for a determination of whether the employer's lawsuit had a legitimate and reasonable basis in law and fact:
 Although it is not unlawful under the Act to prosecute a meritorious action, the same is not true of suits based on insubstantial claims — suits that lack, to use the term coined by the Board, a "reasonable basis." Such suits are not within the scope of First Amendment protection:
 "The first amendment interests involved in private litigation — compensation for violated rights and interests, the psychological benefits of vindication, public airing of disputed facts — are not advanced when the litigation is based on intentional falsehoods or on knowingly CT Page 1112-f frivolous claims. Furthermore, since sham litigation by definition does not involve a bona fide grievance, it does not come within the first amendment right to petition."
 Just as false statements are not immunized by the First Amendment right to freedom of speech, . . . baseless litigation is not immunized by the First Amendment right to petition.
(Citations omitted.) Id., 743. Similarly, Article first, § 10 of the constitution of Connecticut provides that "[a]ll courts shall be open, and every person for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale denial or delay." "Thus does theFirst
Amendment to the U.S. Constitution grant the right of free access to the courts for the remediation of civil wrongs and Section 10 of Article First of the State Constitution confers a similar right." ConnecticutNaional Bank v. Mase, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 269180 (Jan. 31, 1991, Flynn, J.).
Several courts considering whether a party may maintain a CUTPA claim against an opponent for the conduct of the opponent's attorney in judicial proceedings have held that such claims state a cognizable cause of action only for the bringing of a sham lawsuit. "A sham lawsuit is "one instituted by plaintiff in bad faith, on grounds so flimsy that no reasonable prudent person could hold a bona fide belief in the existence of facts necessary to prove the case." Stewart Title Guaranty Company v.Baum, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 394160 (Dec. 18, 1991, Satter, S.T.R.); ConnecticutNational Bank v. Mase, supra, Superior Court, Docket No. 269180; see alsoAbrams v. Knowles, Superior Court, judicial district of New London at Norwich, Docket No. 095287 (December 4, 1990, Axelrod, J.). As the Second Circuit Court of Appeals stated in Suburban Restoration Co. Inc. v.ACMAT, 700 F.2d 98, 102 (2d Cir. 1983):
 We believe that Connecticut's courts would be guided by the strong suggestions from the federal courts that imposing liability for the act of filing a non-sham lawsuit would present serious constitutional problems, and would construe Connecticut law to avoid those problems. . . .[W]e are confident that Connecticut's courts would carve out a similar CT Page 1112-g exception to CUTPA and the common law, whether or not they believed that they were required to do so by the Constitution. In short, we conclude that the activity complained of here — the filing of a single non-sham lawsuit — cannot form the basis of a claim under CUTPA . . .
This court agrees.
The present case raises issues analogous to those addressed by the court in Zeller v. Consolini, 59 Conn. App. 545, __ A.2d __ (2000). There, the issue was whether the defendants could be liable in tort for the legal actions they took in attempting to prevent the plaintiff from developing certain property. The court approved the trial court's application of the Noerr-Pennington doctrine,[4] initially articulated in antitrust cases to shield individuals from liability for petitioning a governmental entity for redress but now "equally applicable to many types of claims which seek to assign liability on the basis of the defendant's exercise of its first amendment rights." Id., 551. Under that doctrine, "petitioning activity is not protected if such activity is a mere sham or pretense to interfere with no reasonable expectation of obtaining a favorable ruling." Id. 554. In Zeller, the court noted that "failure to apply [the doctrine] aggressively may create a `chilling effect' on thefirst amendment right to petition in zoning and other matters." Id. Although applied thus far by our Appellate Court only to protect thefirst amendment right to petition, the logic of the Noerr-Pennington doctrine is equally applicable to the state and federal constitutional right of access to the courts. Accordingly, this court joins with those other courts holding that a party may bring a CUTPA action against a party for the actions of the opponent's attorney in bringing or pursuing a judicial proceeding only if the party pleads and establishes the prior judicial proceeding to be a sham proceeding, one without basis in law or fact.
The Jajers' counterclaim alleges that in a prior proceeding to obtain a judgment of strict foreclosure against property they owned the bank committed the following acts that constituted unfair and deceptive acts of practices violating CUTPA:
 A. The Counterclaim Defendant ("Plaintiff") failed to inform the court of valuable property to which it allegedly obtained title or the proceeds thereof and failed to give the Defendant credit for the value of CT Page 1112-h such valuable property or the proceeds thereof in it's monetary judgment against the Counterclaim Plaintiffs ("Defendants"). The Counterclaim Defendant's ("Plaintiff") actions in attempting failing to inform the Court and failing to the give the Counterclaim Plaintiffs ("Defendants") credit for the value of the property to which it already allegedly held title was unethical, immoral, unscrupulous, offensive to public policy and contrary to the duty of candor to which all parties should be held in matters before the court.
 B. Although the Counterclaim Defendant ("Plaintiff") never obtained title to the so-called "THIRD PIECE", the Counterclaim Defendant ("Plaintiff") or it's agents, without the permission of the Counterclaims Plaintiffs ("Defendants"), without a proper order of ejectment, and without a claim of right, trespassed and entered onto the "THIRD PIECE" which is the residence of the Counterclaim Plaintiffs ("Defendants") — and disturbed the possession of the Counterclaim Plaintiffs ("Defendants") or their tenants. The Counterclaim Defendant's ("Plaintiff") actions in entering onto and trespassing on the Plaintiff's property to exercise rights of ownership at a time when it had no such claim of right is immoral, unscrupulous, offensive to the public policy and contrary to the fundamental rights of real property owners.
 C. The Counterclaim Defendant ("Plaintiff") obtained a Judgment of Strict Foreclosure against the Counterclaim Plaintiffs ("Defendants") at a time when the Counterclaim Defendant ("Plaintiff") knew the Counterclaim Plaintiffs ("Defendants") attorney could not be present in court, was disabled and was about to be suspended from the practice of law and the Counterclaim Plaintiffs ("Defendants") were thus effectively unrepresented Said Judgment was void and as ruled by the Appellate Court in its decision dated March 2, 1999 at 52 Conn. App. 69, said Judgment was reversed. The Counterclaim Defendant's ("Plaintiff") actions in attempting to thwart the statutory purpose of the Connecticut General Statutes and procedure provided thereby are unethical, immoral, CT Page 1112-i unscrupulous, offensive to public policy and contrary to the very purpose the relevant General Statute sought to prevent.
 D. The Counterclaim Defendant ("Plaintiff") obtained a Judgment of Strict Foreclosure without following the correct procedural requirements and attempted to enforce said Judgment against the Counterclaim Plaintiffs ("Defendants"). Said Judgment was void and as ruled by the Appellate Court in it's decision dated March 2, 1999 at 52 Conn. App. 69, said Judgment was reversed. The Counterclaim Defendant's ("Plaintiff") actions in attempting to thwart the well established procedural requirements and rules in obtaining a judgment and then seeking to enforce such a judgment to the detriment of the Counterclaim Plaintiffs ("Defendants") are unethical, immoral, unscrupulous, offensive to public policy and contrary to the very purpose such procedural requirements have been established.
Paragraphs 4A, 4C, and 4D, the subject of the present motion for summary judgment, address the actions of the bank's attorney in obtaining and enforcing that prior judgment of strict foreclosure. Paragraph 4B addresses the actions of the bank itself to enforce that prior judgment of strict foreclosure. The affidavits and materials submitted on summary judgment show that the bank's attorney filed a premature motion for judgment, appeared in court on a day when the motion for judgment was scheduled for short calendar argument, requested the court to enter the judgment despite the absence of the Jagers' attorney, who was unavailable that day because of disciplinary proceedings against him, and over that attorney's written objection filed with the court and specifying the basis for his non-appearance, and that the Appellate Court later held that the Superior Court incorrectly granted the judgment of foreclosure. The Appellate Court ruled that the Superior Court should not have granted the judgment of foreclosure because the disciplinary proceedings pending against the defendants' attorney rendered him "unavailable" under General Statutes § 52-235b,[5] such that the court lacked authority to enter a judgment against the defendants. See New Milford Savings Bank v.Jajer, 52 Conn. App. 69, 77ff, 726 A.2d 604 (1999).
The defendants' claims, in essence, charge violations of the Rules of Professional Conduct (e.g., duty of candor to the tribunal), procedural rules of practices (e.g., filing a motion for judgment before a default CT Page 1112-j had been entered), and violation of state procedural statutes (e.g., seeking a judgment while the opposing party's attorney was unavailable because "disabled," in contravention of § 52-235b). Just as the United States Supreme Court has held that "evidence of anticompetitive intent or purpose, alone, cannot transform otherwise legitimate activity into a sham," Professional Real Estate Investors, Inc. v. ColumbiaPictures Industries, Inc., 508 U.S. 49, 59, 123 L.Ed.2d 611,113 S.Ct. 1920
(1993), so violations of court or statutory rules, by themselves, do not transform an otherwise legitimate effort to seek redress in the courts into a sham judicial proceedings. What defendants complain of here are, at most, errors of procedural and substantive law. Nothing in the allegations of the complaint or materials submitted on summary judgment meets the Noerr-Pennington standard of establishing that the bank brought or maintained a sham judicial proceeding.
CONCLUSION
Because the plaintiff's suit for foreclosure raises legitimate issues, rather than a sham proceeding, the conduct of the bank's attorney during that litigation does not give rise to a CUTPA violation. Accordingly, the plaintiff's motion for summary judgment on paragraphs 4A, 4C, and 4D of the defendants' counterclaim is granted.
SO ORDERED.
BY THE COURT
STEPHEN F. FRAZZINI, J.