STATE OF CONNECTICUT *v.* LOUIS J. MAIOCCO

STATE OF CONNECTICUT *v.* ALMERINDO ALVES

STATE OF CONNECTICUT *v.* JOHN L. BORGES
(3431)
(3432)
(3433)

DUPONT, C. J., HULL and DALY, Js.

Argued June 12—decision released September 24, 1985

*Donald A. Browne,* state's attorney, for the appellant (state).

*Richard T. Meehan, Jr.,* with whom were *John D. Guman, Jr.,* and *James P. McLoughlin,* for the appellees (defendant in each case).

HULL, J. This appeal arises out of the dismissal of three informations charging each of the defendants[1] with larceny in the first degree, a violation of General Statutes § 53a-122, and with conspiracy to commit larceny in the first degree in violation of General Statutes § 53a-48. This appeal, essentially, raises the question of whether the trial court erred in dismissing

---

[1] Although three informations were involved, the charges against all of the defendants arose out of the same events. For that reason the three defendants were to be tried together and the state's appeals have been combined here.

these three informations as a result of the state's failure to be prepared for trial, despite having received one prior extension of time. We find error.

The facts are undisputed. The three defendants were charged, in August, 1983, with the theft of silver bullion from their employer, Handy and Harman Company of Fairfield. Their prosecutions were joined for trial which was to begin on July 3, 1984, but on that day the court granted a two week continuance to the state because a critical witness, Captain Edward Targowski of the Fairfield police department, was ill.

The case was reached for trial again on July 16, 1984, and at that time the state requested a further three week continuance because the state's key witness, Everald Rankin, a co-employee of the defendants, had left the state on vacation despite having been served with a subpoena on July 3, 1984, and despite the efforts of Handy and Harman Company to guaranty his presence at trial. In response to this request by the state, counsel for the defendant Borges moved to dismiss the information against him. Counsel for the defendants Maiocco and Alves orally joined in this motion to dismiss, and subsequently filed written motions to dismiss the informations lodged against them as well.[2]

In response to these motions, the state reiterated its request for a continuance and, at that point, the court, *Melville, J.,* denied that request. The trial court ruled that the state "could go forward without the witness,

---

[2] The motion to dismiss filed by Borges and joined in by Maiocco and Alves was based upon Practice Book § 820 (referring to motions to suppress) and General Statutes § 54-56 (referring to dismissals of informations due to insufficient evidence or cause to justify continuation of the prosecution). The defendants concede that the reference to Practice Book § 820 was an error and that Practice Book § 815 is the appropriate reference. The defendants assert, however, that the portion of General Statutes § 54-56 referring to insufficient cause is appropriately cited. We conclude that General Statutes § 54-56 is sufficiently broad to apply to the case before us.

that it could request a nolle, or that it would suffer a dismissal. Now, those are the options open to the State at this time.

"I strongly feel that the company had some serious responsibility to make their witnesses available since apparently this witness' presence was peculiarly within the control of the company. And they have failed to do that. And I don't think that they have any complaints at this point if this case is dismissed.

"However, the State still may prosecute this case by having the individuals rearrested after a nolle has been entered within thirteen months under the statute. Now the State can do that if they want to. Or they can suffer a dismissal if they want to. What is the State's pleasure?"

The state persisted in its request for a continuance and the trial court, having denied that request, granted the defendants' motions to dismiss with prejudice. The state has, with the permission of the trial court, filed the present appeals from those dismissals.

At the outset, the defendants point out that the state has briefed two issues while only one of them was raised in its preliminary statement of issues. The state had originally claimed only that the court erred in granting the defendants' motions to dismiss. In its brief, however, the state also argued the issue of whether the delay in the defendants' prosecution constituted a violation of their sixth amendment constitutional right to a speedy trial. These two issues are really one and the same. The trial court's dismissal of the information was based, in part, on speedy trial concerns.[3] Thus, the brief complies with Practice Book §§ 3012 (a) and 3060F (a).

---

[3] The court commented, at one point, that "I am not going to let anyone go, but I have to honor the right of the speedy trial here. This case is a year old or approximately a year old and the court has made every effort to get this case on trial."

The state and the defendants only strike glancing blows at each other through their briefs. They seem to focus on different concerns than those upon which the court's rulings were based. The state's brief argues, primarily, that the trial court's rulings were based upon its concerns for the defendants' rights to speedy trials. The defendants respond that the court was merely exercising its control over the trial docket in dismissing the three informations. We conclude that the court's rulings reflect both concerns and we thus consider the merits of both bases for those rulings.

The first concern expressed by the court in its rulings was the defendants' rights to a speedy trial. The actual length of the delay, however, is not the only consideration involved in speedy trial claim. The court must also balance the reason for the delay, the defendants' assertion of their right and the prejudice caused to the defendants by the delay. *Barker* v. *Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State* v. *Davis,* 192 Conn. 739, 741, 474 A.2d 776 (1984); *State* v. *Cleary,* 3 Conn. App. 349, 350–51, 488 A.2d 831 (1985). An examination of these four factors does not support the dismissal of these three informations.

The delay between the defendants' arrests in this case and the dismissal of the charges against them was only thirteen months. That must be compared with the twenty-six month delay in *State* v. *Davis,* supra, the three and one-half year delay in *State* v. *Gasparro,* 194 Conn. 96, 480 A.2d 509 (1984), or the five year delay in *Barker* v. *Wingo,* supra. In none of those cases was the delay considered sufficient, in and of itself, to constitute a denial of the right to a speedy trial. Nor, obviously, can that be said in this case.[4]

---

[4] It should also be noted that the delay is still well within the bounds of the eighteen month maximum period for initiating trial mandated by General Statutes § 54-82*l* and Practice Book §§ 956B, 956C.

The reason for the delay in this case clearly militates against the state. Although the first delay was beyond the state's control, the state did have the ultimate responsibility to ensure the presence of Rankin on July 16. It did, however, make a good faith effort to obtain his presence both by the use of a subpoena and by requesting a representative of Handy and Harman to take steps to see that Rankin appeared. The defendants point out that there are statutory provisions whereby material witnesses in a criminal case may be arrested upon a complaint of any state's attorney alleging that the witness is likely to disappear from the state.[5] The defendants also argue that the court noted, in the colloquy leading to the dismissals, that the state could have issued a capias[6] to assure the attendance of Rankin. We hold that such draconian remedies should not be required of the state in order to prove that it made a good faith effort to secure the attendance of a witness under circumstances such as these.

[5] General Statutes § 54-82j provides: "Upon the written complaint of any state's attorney addressed to the clerk of the superior court for the judicial district wherein such state's attorney resides, alleging (1) that a person named therein is or will be a material witness in a criminal proceeding then pending before or returnable to the superior court for such judicial district, and in which proceeding any person is or may be charged with an offense punishable by death or imprisonment for more than one year, and (2) that the state's attorney believes that such witness is likely to disappear from the state, secrete himself or otherwise avoid the service of subpoena upon him, or refuse or fail to appear and attend in and before such superior court as a witness, when desired, the clerk or any assistant clerk of the court shall issue a warrant addressed to any proper officer or indifferent person, for the arrest of the person named as a witness, and directing that such person be forthwith brought before any judge of the superior court for such judicial district, for examination. The person serving the warrant shall bring the person so arrested before the judge for examination as soon as is reasonably possible and hold him subject to the further orders of the judge. The person serving the warrant shall also notify the state's attorney of such arrest and of the time and place of such examination."

[6] Practice Book § 792 provides: "If, after proper service within this state of a subpoena, the person subpoenaed fails to appear at the designated place and time, the judicial authority may issue a capias directed to a proper officer to arrest such person and bring him before the judicial authority."

Third, the record before us does not reflect that the defendants raised the speedy trial issue at any time prior to July 16. As the court stated in *State* v. *Gasparro,* supra, 101, " '[w]e emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.' *Barker* v. *Wingo,* supra, 532. Our review of the record indicates a complete failure on the part of the defendant to assert his right of speedy trial until the eve of trial."

Finally, the record reflects an absolute lack of prejudice caused by the delay in reaching trial here. Prejudice, within the meaning of *Barker* v. *Wingo,* supra, must be assessed by considering three interests of the defendants: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of their anxiety and concern; and (3) reducing the possibility that their defense might be impaired. Id.; *State* v. *Gasparro,* supra; *State* v. *Cleary,* supra, 352. In the present case, the defendants were released from custody on bond on the day of their arrests and they were free thereafter; their anxiety and concern could not have been minimized any further, short of a final disposition; and finally, no claim was ever made that the defendants were hindered in any way from preparing their defense. Thus, we conclude that the court's rulings cannot be supported by speedy trial considerations.

With regard to the second of the trial court's bases for its ruling we note that there is some disagreement between the parties over precisely what ruling is at issue. The defendants assert that since only the granting of the motions to dismiss has been claimed by the state as error, the state must not dispute the denial of its request for a continuance. A review of the transcript, however, indicates that the motions to dismiss and the request for a continuance were treated by the court as alternatives. Upon denying the continuance request the court granted the motions to dismiss. The

basis was the same for both rulings and the state's claim of error regarding the trial court's dismissal of the three informations necessarily entails consideration of the court's ruling on the continuance request.

"The matter of a continuance is traditionally within the discretion of the trial judge, which will not be disturbed absent a clear abuse." *State* v. *Beckenbach,* 1 Conn. App. 669, 674, 476 A.2d 591, cert. granted, 193 Conn. 806, 477 A.2d 659 (1984). We conclude that there was an abuse of discretion in this case.

The court's denial of the state's request for a continuance left the state with only two real alternatives: (1) to proceed without a key witness; or (2) to suffer dismissals.[7] We conclude that the facts and circumstances of this case do not support denial of the state's request for a continuance or the court's subsequent dismissals of these informations. This case is unlike *State* v. *Cleary,* supra, in which the court concluded that the state's failure to proceed with trial thirty-six months and five scheduled trial dates after the defendant's arrest constituted failure to prepare diligently for trial. Rather, the same considerations which are relevant to the speedy trial claim in this case demonstrate the abuse of discretion with regard to this claim.

There is error, the judgments of the trial court are set aside and the cases are remanded to the trial court to be restored to the trial docket.

In this opinion the other judges concurred.

---

[7] Although the court also offered the state the option of entering nolle prosequis against the defendants, General Statutes § 54-56b provides that if the defendants had objected to the entry of nolle prosequis, the court would have been obligated to render a judgment of dismissal unless the state could show that its witness had died, disappeared or had become disabled. Since Rankin's location was known and his return was expected within three weeks, it cannot be said that he had disappeared. Hence, the state's option to enter a nolle was the functional equivalent of requesting dismissals.