******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* RICHARD P.*
(AC 39368)

Lavine, Sheldon and Prescott, Js.

*Syllabus*

The state appealed to this court from the judgment of the trial court dismissing its charges against the defendant of sexual assault in the fourth degree and risk of injury to a child in connection with his alleged physical and sexual abuse of his minor children. Prior to trial, the state informed the court that it was entering a nolle prosequi because the children's mother had sent a letter indicating that she and the children had relocated to London, England, and would not be returning to the United States, and, thus, that they were beyond the reach of the state's power to compel their attendance at trial. The children's mother also requested that the state not contact her further. The court noted the nolle prosequi and granted the defendant's motion to dismiss the charges, concluding that the state had not sufficiently represented that a material witness had died, disappeared or became disabled within the meaning of the applicable statute (§ 54-56b). The court determined that the mother and the children were material witnesses who were not unavailable but who, instead, were unwilling to assist the state. On the granting of permission, the state appealed to this court. *Held*:

1. The state could not prevail on its claim that the minor children had "become disabled" within the meaning of § 54-56b because their mother took them back to their native England and, thus, as a result of their age and location, they lacked the legal ability to return to Connecticut and their attendance at trial could not be compelled by the state; the state's claim that § 54-56b should be interpreted to apply in circumstances where a material witness is "unavailable" was unavailing, as the legislature, having used "unavailable" in other statutes, chose not to use it in § 54-56b or to explicitly express its intent, as it has in other statutes, to include circumstances in which a witness is beyond the reach of process, which indicated that it intended to sweep less broadly when it chose not to include the term unavailable in § 54-56b, and this court rejected the state's claim that the statutory phrase "has . . . become disabled" should be interpreted to include circumstances in which a witness cannot be compelled to testify for reasons that extend beyond any physical or mental disability of the witness, as such an expansive definition would risk rendering superfluous the other two exceptions in § 54-56b, namely, death and disappearance, the passive nature of the phrase was not suggestive of a process in which an event or condition stripped the state of its ability to compel a witness' attendance at trial, and the statutory language did not apply to the factual circumstances here, where the children, through their mother, decided not to cooperate in the prosecution of this matter by voluntarily placing themselves beyond the reach of the state's ability to compel their attendance at trial.

2. This court found unavailing the state's claim that the term "disappeared" in § 54-56b should be construed to mean absence from the jurisdiction and to include circumstances in which the state knows the location of a witness but the witness is beyond the reach of legal process to compel his or her attendance at trial and the witness is not expected to return to the jurisdiction; such a construction would do violence to the common and ordinary meaning of "disappeared," the children here did not vanish from sight, as their location was known to the state and they were not in hiding, and this court was confined to the statute as it is presently written.

Argued October 5, 2017—officially released February 13, 2018

*Procedural History*

Information charging the defendant with two counts of the crime of risk of injury to a child and one count of the crime of sexual assault in the fourth degree, brought to the Superior Court in the judicial district

of Danbury, where the court, *Eschuk, J.*, denied the defendant's motion for a hearing to challenge a certain affidavit; thereafter, the state entered a nolle prosequi as to all charges; subsequently, the court, *Russo, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the state, on the granting of permission, appealed to this court. *Affirmed.*

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, was *Stephen J. Sedensky III*, state's attorney, for the appellant (state).

*Daniel P. Scholfield*, with whom, on the brief, was *Hugh F. Keefe*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. The state of Connecticut appeals from the judgment of dismissal rendered by the trial court after the state entered a nolle prosequi in a criminal case charging the defendant, Richard P., with various offenses arising from his alleged physical and sexual abuse of two of his children.[1] The state claims that the court improperly dismissed the case because it had sufficiently represented to the court that a material witness had "died, disappeared or become disabled" within the meaning of General Statutes § 54-56b and Practice Book § 39-30. We are not persuaded and, therefore, affirm the judgment of the court.

The parties do not dispute the following facts. On January 19, 2013, the mother of the defendant's children made a complaint to the Newtown Police Department that her husband, the defendant, had physically and sexually abused two of her children, who were six and eight years old. The following day, the mother reported to the police department that one of the two children had recanted the allegation and that she had misunderstood the other child, whom she thought had reported sexual abuse to her. The police department then conducted an investigation that included a forensic interview of the children by a multi-disciplinary team.

On April 27, 2013, the defendant was arrested pursuant to a warrant and charged with sexual assault in the fourth degree in violation of General Statutes § 53a-73a, risk of injury to a child in violation of General Statutes § 53-21 (a) (1), and risk of injury to a child in violation of § 53-21 (a) (2). The court issued two protective orders prohibiting the defendant, among other things, from having any contact with the two children. Subsequently, the court also appointed a guardian ad litem for the children.

On September 5, 2014, the defendant filed a motion seeking a *Franks* evidentiary hearing regarding the veracity of information contained in the affidavit accompanying the state's application for the arrest warrant. See *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). In that motion, the defendant asserted that the investigating officer intentionally or recklessly had misrepresented the content of statements made by the children during the forensic interview of the children.[2]

Following a review of various submissions by the state and the defendant, the court, *Eschuk, J.*, concluded in a memorandum of decision that the affidavit inaccurately described some of the statements made by the children during the forensic interview and that the inaccurate descriptions were made with reckless disregard for their truth. The court nevertheless declined to dismiss the charges against the defendant because, even if the inaccurate portions of the affidavit

were not considered, other information set forth in the warrant application was sufficient to demonstrate probable cause for the defendant's arrest.

On May 26, 2016, the state and the defendant appeared before the court, *Russo, J.* The state entered a nolle prosequi, stating, "[w]itness is unavailable." The state asked permission to place on the record its reasons for entering a nolle. The state explained that the children and their mother had moved to London, England, and that the children's mother had sent a letter on May 23, 2016, in which she indicated that she and the children would not be returning to the United States and requested that the state not contact her further. After making these representations, Stephen J. Sedensky III, the state's attorney for the judicial district of Danbury, stated: "So, both [she] . . . and the children are unavailable, Your Honor, and they are . . . outside the United States and not subject to interstate . . . subpoena issues, and so for those reasons . . . the unavailability of three key witnesses in the case, the state is entering a nolle." Following this representation, the court noted the nolle.

The defendant then moved for a dismissal of the charges against him. In support of his motion, the defendant offered, and the court admitted over the state's objection, a copy of the May 23, 2016 letter from the children's mother.[3] At the conclusion of the hearing, the court indicated that a nolle had entered that day and that, after giving the parties an opportunity to file briefs, it would issue a decision on whether the case should be dismissed on the next court date.

Following additional argument on June 15, 2016, the court issued an oral decision granting the defendant's motion to dismiss. The court indicated that the state had not sufficiently represented that a material witness had died, disappeared, or become disabled within the meaning of § 54-56b and Practice Book § 39-30, and, as a result, the defendant was entitled to a dismissal. In the court's view, the material witnesses were not "unavailable,"[4] but instead were simply unwilling to assist the state. This appeal followed.

On appeal, the state claims that, under the circumstances of this case, in which the mother relocated with the two children to another country beyond the reach of the state's power to compel their attendance at trial and refuses to return with them voluntarily to the United States, the court improperly entered a judgment of dismissal for two reasons. First, it contends that the children "had become disabled" within the meaning of § 54-56b. Alternatively, the state asserts that the children had "disappeared" within the meaning of § 54-56b. We disagree with both of these arguments.[5]

I

We begin our analysis with a general discussion

regarding the law as it pertains to a nolle prosequi and the appropriate standard of review for the state's claims on appeal. A nolle prosequi is "a declaration of the prosecuting officer that he will not prosecute the suit further at that time." (Internal quotation marks omitted.) *State* v. *Winer*, 286 Conn. 666, 685, 945 A.2d 430 (2008), quoting *State* v. *Ackerman*, 27 Conn. Supp. 209, 211, 234 A.2d 120 (1967). As our Supreme Court has explained, "[t]he effect of a nolle is to terminate the particular prosecution of the defendant without an acquittal and without placing him in jeopardy. . . . Therefore, the nolle places the criminal matter in the same position it held prior to the filing of the information. Indeed, no criminal matter exists until, and if, the prosecution issues a new information against the defendant. . . . If subsequently the prosecuting authority decides to proceed against the defendant, a new prosecution must be initiated." (Citation omitted; internal quotation marks omitted.) *State* v. *Richardson*, 291 Conn. 426, 430, 969 A.2d 166 (2009).

"Until the enactment of General Statutes [§ 54-56b] in 1975 . . . the power to enter a nolle prosequi was discretionary with the state's attorney; neither the approval of the court nor the consent of the defendant was required. . . . The principles that today govern the entry of a nolle prosequi place some restrictions on the prosecuting attorney's formerly unfettered discretion. Although the decision to initiate a nolle prosequi still rests with the state's attorney, the statute and the rules now permit the defendant to object to a nolle prosequi and to demand either a trial or a dismissal except upon a representation to the court by the prosecuting official that a material witness has died, disappeared or become disabled or that material evidence has disappeared or been destroyed and that a further investigation is therefore necessary." (Citations omitted; internal quotation marks omitted.) *State* v. *Lloyd*, 185 Conn. 199, 201–202, 440 A.2d 867 (1981).

In determining whether to accept the state's representation and to decline to enter a dismissal, "the trial court need not receive evidence, and thus makes no findings of fact, to determine the accuracy of the state's representations." Id., 204. Our Supreme Court also has made clear that, at least in circumstances in which the meaning of § 54-56b is not in dispute, "[t]he proper test is whether there has been a manifest abuse of prosecutorial discretion. The court must accept the entry of the nolle prosequi for the record unless it is persuaded that the prosecutor's exercise of discretion is clearly contrary to manifest public interest." Id.;[6] see also *State* v. *Richardson*, supra, 291 Conn. 429 n.4.

In the present case, however, the state concedes that the resolution of its appeal does not turn on the factual sufficiency of the representation made by the prosecutor but instead on the meaning of the language

employed by the legislature in § 54-56b. Thus, as the state itself recognizes, the "resolution of that question ultimately gives rise to an issue of statutory construction over which our review is plenary." *State* v. *Aloi*, 280 Conn. 824, 832, 911 A.2d 1086 (2007); *Bennett* v. *New Milford Hospital, Inc.*, 117 Conn. App. 535, 541, 979 A.2d 1066 (2009), aff'd, 300 Conn. 1, 12 A.3d 865 (2011).

The following principles governing statutory construction are well established and guide our analysis. "When construing a statute, our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Internal quotation marks omitted.) *State* v. *Drupals*, 306 Conn. 149, 159, 49 A.3d 962 (2012). We note that, under General Statutes § 1-2z, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 779, 961 A.2d 349 (2008).

"[S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 303, 21 A.3d 759 (2011). "When a statute is not plain and unambiguous, we also look for interpretative guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Francis* v. *Fonfara*, 303 Conn. 292, 297, 33 A.3d 185 (2012).

"When the meaning of a statute initially may be determined from the text of the statute and its relationship to other statutes . . . extratextual evidence of the meaning of the statute shall not be considered. . . . When the meaning of a provision cannot be gleaned from examining the text of the statute and other related statutes without yielding an absurd or unworkable result, extratextual evidence may be consulted. . . . [E]very case of statutory interpretation . . . requires a threshold determination as to whether the provision under consideration is plain and unambiguous. This threshold determination then governs whether extra-

textual sources can be used as an interpretive tool. . . . [O]ur case law is clear that ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation." (Citation omitted; internal quotation marks omitted.) *State* v. *Jackson*, 153 Conn. App. 639, 643–44, 103 A.3d 166 (2014), cert. denied, 315 Conn. 912, 106 A.3d 305 (2015).

## II

We first address the state's assertion that the minor children have "become disabled" within the meaning of the statute because their mother took them back to their native England and thus, as a result of their age and location, they lack the legal ability to return to Connecticut and the state is therefore unable to compel their attendance at trial.[7] In other words, the state contends that the statutory phrase "has . . . become disabled" should be construed to include not only a physical or mental disability that would prevent a witness from testifying, but also a "legal" disability that would prevent the state from compelling the witness to testify. In advancing this assertion, the state argues that the phrase "has . . . become disabled" should be construed to be synonymous with "has . . . become unavailable," as that term is typically used in related contexts regarding witnesses.

We begin with the words of § 54-56b, which provides in relevant part: "A nolle prosequi may not be entered as to any count in a complaint or information if the accused objects to the nolle prosequi and demands either a trial or dismissal, except with respect to prosecutions in which a nolle prosequi is entered upon a representation to the court by the prosecuting official that a material witness has died, disappeared or become disabled . . . ."[8]

The state concedes, as it must, that the legislature did not choose to employ the expansive term "unavailable" in § 54-56b. The phrase "unavailable" is a term of art when used with respect to witnesses, although its meaning often varies depending on the circumstances in which it is used. See, e.g., Conn. Code Evid. § 8-6, commentary ("At common law, the definition of unavailability varied with the individual hearsay exception. . . . Section 8-6 eschews a uniform definition of unavailability." [Citations omitted.]); Practice Book § 43-40 (2) (for purposes of calculating speedy trial deadline, "any essential witness shall be considered unavailable whenever such person's whereabouts are known but his or her presence for trial cannot be obtained by due diligence or he or she resists appearing at or being returned for trial"); Practice Book§ 23-39;[9] see also Practice Book § 40-56;[10] Fed. R. Evid. 804 (a).[11]

The legislature has included the term "unavailable" with respect to witnesses in other statutes. See, e.g., General Statutes §§ 54-86*l*, 52-180, 52-148b (b) (1), 46b-

129 (k) (4) and (5), and 17a-11 (f) (5). Presumably, it chose not to do so when it enacted § 54-56b. "[A] court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 216, 901 A.2d 673 (2006).

This rule of statutory construction has been applied vigorously in instances in which the legislature has repeatedly employed a term in other statutes, but did not use it in the provision to be construed. As our Supreme Court stated in *Viera* v. *Cohen*, 283 Conn. 412, 431, 927 A.2d 843 (2007), "we underscore that the legislature frequently has used the term withdrawal. . . . Typically, the omission of a word otherwise used in the statutes suggests that the legislature intended a different meaning for the alternate term." (Citation omitted; internal quotation marks omitted.) "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003). Accordingly, we find it significant that the legislature did not choose to include the term "unavailable" in § 54-56b.

Moreover, in other statutes concerning witnesses, the legislature explicitly has expressed its intent to include circumstances in which a witness is beyond the reach of process, or cannot be found, and thus cannot be compelled to testify. For example, in General Statutes § 52-160, the legislature provided that "[i]f any witness in a civil action is beyond the reach of the process of the courts of this state, or cannot be found . . . [a transcript of his or her recorded testimony in] a former trial of the action . . . shall be admissible in evidence, in the discretion of the court . . . ." Presumably, the legislature chose not to employ the same or similar language in § 54-56b, thereby indicating an intent that § 54-56b sweep less broadly.

The state relies on *State* v. *Smith*, 289 Conn. 598, 960 A.2d 993 (2008), in support of its assertion that § 54-56b should be interpreted to apply in circumstances where a material witness is "unavailable." Specifically, the state relies on the following statement by our Supreme Court in *Smith*: "Section 54-56b allows the entry of a nolle prosequi upon a representation to the court by the prosecuting official that a material witness

is unavailable to testify." (Internal quotation marks omitted.) Id., 609. This statement, however, is undeniably dictum.

In *Smith*, the court was asked to decide the specific question of whether the trial court must conduct an evidentiary hearing before accepting the state's representation as to the reasons why it was choosing to enter a nolle prosequi. Id. The prosecutor in that case had represented to the trial court that a witness was "unavailable" because, if called to testify at trial, he was planning to invoke his constitutional privilege against self-incrimination. Id., 606. In deciding the question of the need for an evidentiary hearing, the court in *Smith* made clear that it was unnecessary to decide any broader questions regarding the meaning of the language in § 54-56b or Practice Book § 39-30 by noting that "the defendant does not dispute that [the witness'] invocation of this privilege falls within [these provisions], only that the trial court improperly relied on the state's representation as evidence." Id., 609 n.16. The court in *Smith* never analyzed the relevant language in the statute and rules of practice but merely assumed without deciding that the witness' "unavailability" fell within the language of these provisions. Accordingly, the decision in *Smith* does not advance the state's construction of the statute.

For these reasons, we decline to accept the state's invitation to import a broad exception for "unavailable" witnesses into § 54-56b. We must presume from the legislature's use of the term "unavailable" in other sections of the General Statutes that the legislature intended to sweep less broadly when it chose not to include the term "unavailable" in § 54-56b.

We turn then to the narrower question of whether the statutory phrase "has . . . become disabled" should be interpreted, as the state contends, to include circumstances in which a witness cannot be compelled to testify for reasons that extend beyond any physical or mental disability of the witness. In this regard, the state argues that because the legislature did not define the phrase "become disabled," we should "look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Agron*, 323 Conn. 629, 635, 148 A.3d 1052 (2016).

Unsurprisingly, resort to dictionary definitions does not yield an easy or uniform answer. For example, Merriam-Webster's Collegiate Dictionary defines "disabled" to mean "incapacitated by illness or injury." Merriam-Webster's Collegiate Dictionary (11th Ed. 2012) p. 355. Webster's Unabridged Dictionary defines "disable," when used as a verb, to mean "1. to make unable or unfit; weaken or destroy the capability of; cripple; incapacitate . . . ." Random House Webster's Unabridged Dictionary (2d Ed. 2001) p. 560. The second definition provided, however, defines "disable" to mean "to make

legally incapable." Id. Black's Law Dictionary defines "disable" to mean: "to take away the ability of, to render incapable of proper and effective action." Black's Law Dictionary (5th Ed. 1979) p. 416. Both the defendant and the state attempt to "cherry-pick" dictionary definitions that they contend support their respective positions, but, in our view, resort to dictionary definitions does not yield a clear or obvious answer, and the meaning of "disabled" often varies significantly depending on the context in which it is used.

The essence of the state's argument is that, by employing the phrase, "has . . . become disabled," the legislature intended that the defendant not be entitled to a dismissal following the entry of a nolle prosequi in any instance in which a material witness in the case cannot be compelled by the state to testify. Such an expansive definition of that phrase, however, risks swallowing up and rendering superfluous the other two exceptions included by the legislature: death and disappearance.[12] Certainly, if a witness has died or disappeared, the state will be unable to compel his or her testimony because it will be unable to serve a subpoena on that witness.[13]

Moreover, the state's proffered definition of the phrase "has . . . become disabled" simply is, in our view, an alternative argument why it should be construed to mean "has . . . become unavailable" as that phrase is often used with respect to witnesses. For the reasons we previously have stated, however, we find it significant that the legislature has used the term "unavailable" in other statutes but has not chosen to use it in § 54-56b.

We also find significant that the legislature used the passive phrase "has . . . become disabled" in § 54-56b. In our view, this language suggests that the process by which the witness became disabled was one in which an event or condition beyond the voluntary choice of the witness or his guardian not to cooperate with the state now prevents that witness from being able to testify in the matter. Stated another way, the language is not suggestive of a process in which an event or condition has stripped the state of its ability to compel the witness' attendance at trial. In this case, the children (through their mother) have decided not to cooperate in the prosecution of this matter by voluntarily placing themselves beyond the reach of the state's ability to compel their attendance at trial.[14] The state's assertion that the legislature intended to include such a factual circumstance within the statutory exception by employing the phrase "has . . . become disabled" is simply not persuasive.

Finally, the state's reliance on *New Milford Savings Bank* v. *Jajer*, 52 Conn. App. 69, 726 A.2d 604 (1999), is misplaced. In *New Milford Savings Bank*, a foreclosure action, this court was tasked with construing General

Statutes § 52-235b, which provides: "If, prior to judgment, an attorney for any reason ceases to be a member of the bar or becomes physically or mentally incapacitated *or otherwise disabled* so as to prevent him from appearing in court in an action in which he has appeared for a client, further proceedings shall not be taken in the action against the client, without leave of the court, until thirty days after notice to appear in person or by another attorney has been served upon the client either personally or in such manner as the court directs." (Emphasis added.)

The defendant argued in *New Milford Savings Bank* that the trial court should not have rendered a judgment of foreclosure in that case. There, the defendant's attorney was unable to attend the trial in the foreclosure matter because he was obligated to appear at a hearing before another Superior Court that was considering whether to suspend him from the practice of law after he pleaded guilty to a felony charge in federal court. *New Milford Savings Bank* v. *Jajer*, supra, 52 Conn. App. 76–83. Under those circumstances, the defendant in the foreclosure matter argued that his lawyer had been " 'otherwise disabled' " within the meaning of § 52-235b; id., 77; and therefore the trial should have been stayed. Id., 77–78. This court agreed, concluding that the statute applied to circumstances beyond the physical or mental disability of an attorney to include a circumstance in which the attorney was obligated to attend his own suspension hearing. Id., 81–83.

Because the language of § 52-235b is critically different from the language in § 54-56b, we conclude that this court's decision in *New Milford Savings Bank* does not support the state's construction of § 54-56b in the present case. The language of § 52-235b is fundamentally different from that of § 54-56b because it includes by direct reference a "physical or mental" incapacity and then explicitly adds language, not present in § 54-56b, that extends its reach beyond physical or mental infirmities to include other forms of disability. Indeed, the decision in *New Milford Savings Bank* supports the defendant's arguments in this case because it provides yet another example of a situation in which the legislature has expressed an intent to expand the coverage of a statute to circumstances beyond those involving only a physical or mental disability. The legislature did not do so in § 54-56b.

In sum, we conclude that the statutory phrase "has . . . become disabled" in § 54-56b was not intended to extend to instances in which the state lacks the ability to compel a witness to testify at trial. Accordingly, we are not persuaded by the state's first claim.

### III

We next address the state's claim that the defendant was not entitled to a dismissal of the prosecution

because it had sufficiently represented that material witnesses (the children) had "disappeared" within the meaning of § 54-56b. Specifically, the state argues that the term "disappeared" must be construed to include circumstances in which the state knows the location of a witness but the witness is beyond the reach of legal process to compel his or her attendance at trial, and he or she is not expected to return to the jurisdiction. This claim does not warrant much discussion.

In pressing this claim, the state concedes that it knows the precise location of the witnesses. Despite this concession, the state argues in a contradictory fashion that the "witnesses have passed out of sight and vanished from the state." It also concedes that in ordinary parlance and pursuant to standard dictionary definitions, "disappeared" means "to pass out of sight either suddenly or gradually; vanish." American Heritage Dictionary of the English Language (New College Edition 1981) p. 374; see also Merriam-Webster's Collegiate Dictionary (11th Ed. 2012) p. 355 ("to pass from view").

Despite its concessions, the state argues that two cases support its construction of the term "disappeared." First, it relies on this court's decision in *State* v. *Maiocco*, 5 Conn. App. 347, 354 n.7, 498 A.2d 125, cert. denied, 197 Conn. 819, 501 A.2d 388 (1985), in which this court stated with respect to a witness: "Since [the witness'] location was known and his return was expected within three weeks, it cannot be said that he had disappeared." From this sentence, the state argues that if "the witness' location in *Maiocco* had been known, but he had not been expected to return, then, extrapolating from *Maiocco*, he arguably would have qualified as having 'disappeared' within the purview of § 54-56b."

*Maiocco* is not entitled to the weight the state places on it. First, the state concedes that this statement was dictum, because the issue in that case was whether the trial court properly dismissed the case due to the state's failure to be prepared for trial. Second, the single sentence relied on by the state is unclear and ambiguous because it is impossible to determine from that sentence whether, in finding that the witness had not "disappeared," the court relied on the fact that (1) the witness' location was known, (2) the witness was expected to return, or (3) a combination of those two facts.

We are also unpersuaded by the state's citation to an out-of-state case, *Swindler* v. *St. Paul Fire & Marine Ins. Co.*, 223 Tenn. 304, 444 S.W.2d 147 (1969), for the proposition that something has disappeared simply because it cannot be retrieved. That case involved the " 'disappearance' " of money, not a witness in a criminal case. Id., 306. Moreover, the court in *Swindler* was engaged in the interpretation of an insurance policy; id., 307; not a statute, and emphasized that its conclusion regarding the meaning of that term was reached after

considering the adjoining terms in the policy; id., 308; none of which are present in § 54-56b. Accordingly, *Swindler* is inapposite.

We decline the state's invitation to adopt an interpretation of the term "disappeared" that would define it as absence from the jurisdiction. Such a construction would do violence to the common and ordinary meaning of the term. The children here have not vanished from sight. Their location is known to the state, and they are not in hiding.

Although we agree with the state as a general matter that protecting children from sexual abuse is of profound importance, § 54-56b applies to all criminal prosecutions and it is not our role to torture its provisions simply because the state alleges sexual misconduct against children in this case. If the legislature wants to broaden the exceptions for this type of case, or for any other criminal matters, it may choose to do so. This court, however, is confined to the statute as it is presently written.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of alleged victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the alleged victim or others through whom the alleged victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The court granted the state permission to appeal pursuant to General Statutes § 54-96.

[2] The defendant asked that any factual finding made by the trial court after conducting a *Franks* evidentiary hearing be considered in deciding his motion to dismiss for lack of probable cause.

[3] In her five page letter, the children's mother sets forth a number of criticisms regarding the manner in which the state conducted its investigation of this case, and in particular, with the forensic interviews of the children. The concluding paragraph of the letter provides: "I want you to stop hurting my family. We have gone through two police investigations and two [Department of Children and Families]/social services investigations as well as years of intimidation, threats, and mistreatments by authorities in CT, plus the devastating impact of the case. The children have settled permanently into life in the UK after moving back to our home in London in September, and they have the basic right to have something left of their childhoods with their father. This case has also harmed my youngest son, whom we have just found out is autistic. Our family has needed extra support; instead you have gone out of your way to hurt us. Please do not contact me again."

[4] For the reasons we explain in this opinion, we disagree with the trial court's broad use of the term "unavailable" in this context, but agree that the state failed to establish that a material witness had died, disappeared or become disabled within the meaning of the statute.

[5] We disagree with the defendant's assertion that the state failed to preserve these claims on appeal because it initially had argued only that the witnesses were "unavailable" and had not relied on the statutory language that the witnesses were "disabled" or had "disappeared." The state, in its memorandum of law filed on June 7, 2016, specifically briefed the meaning of those statutory terms and the relevant case law. It is also apparent that the trial court, in rejecting the state's claim, understood that the state was relying on the statutory language when it had argued that the witnesses were "disabled" or had "disappeared."

[6] It is true that the court in *Lloyd* also stated that "[g]ood faith disagreements about what constitutes disability do not demonstrate a manifest abuse of prosecutorial discretion." *State* v. *Lloyd*, supra, 185 Conn. 205. Read in context, we view this language as a reference to good faith factual disputes regarding whether a particular witness is disabled. We do not read the

language as imposing an obligation on the court to defer to the prosecutor's interpretation of the meaning of § 54-56b.

[7] The state argues on appeal that only the children have "become disabled" in this case. The state does not advance the same argument regarding the children's mother despite the fact that she, too, is presumably beyond the reach of the state's power to compel her attendance at trial.

[8] Practice Book § 39-30 provides: "Where a prosecution is initiated by complaint or information, the defendant may object to the entering of a nolle prosequi at the time it is offered by the prosecuting authority and may demand either a trial or a dismissal, except when a nolle prosequi is entered upon a representation to the judicial authority by the prosecuting authority that a material witness has died, disappeared or become disabled or that material evidence has disappeared or has been destroyed and that a further investigation is therefore necessary."

Because this provision is almost identical to § 54-56b and neither party argues that the two provisions should be interpreted differently, we confine our analysis to the language of § 54-56b.

[9] Practice Book § 23-39 provides: "(a) Upon leave of the judicial authority, the testimony of any person may be taken by deposition if the testimony will be required at an evidentiary hearing and it appears:

"(1) the testimony may not be available at the required evidentiary hearing because of physical or mental illness or infirmity of the witness; or

"(2) the witness resides out of this state and cannot be compelled to attend and give testimony; or

"(3) the witness may otherwise be unavailable to testify at the required evidentiary hearing.

"(b) The admissibility of deposition testimony shall be governed by the rules of evidence."

[10] Practice Book § 40-56 provides: "(a) 'Unavailable' as used in Section 40-46 includes situations in which the deponent:

"(1) Is exempted by a ruling of the judicial authority on the ground of privilege from testifying concerning the subject matter of his or her deposition;

"(2) Persists in refusing to testify concerning the subject matter of his or her deposition despite an order of the judicial authority to do so;

"(3) Testifies to a lack of memory of the subject matter of his or her deposition;

"(4) Is unable to be present or to testify at a trial or hearing because of his or her death or physical or mental illness or infirmity; or

"(5) Is absent from the trial or hearing and the proponent of his or her deposition has been unable to procure his or her attendance by subpoena or by other reasonable means.

"(b) A deponent is not unavailable as a witness if his or her exemption, refusal, claim of lack of memory, inability, or absence is the result of the procurement or wrongdoing by the proponent of his or her deposition for the purpose of preventing the witness from attending or testifying."

[11] Most often, the issue of whether a witness is unavailable arises with respect to the admissibility of hearsay evidence in a court proceeding. Prior to the adoption of the Connecticut Code of Evidence, our Supreme Court cited with approval the types of unavailability listed in § 804 of the Federal Rules of Evidence. See, e.g., *State* v. *Bryant*, 202 Conn. 676, 694, 523 A.2d 451 (1987). Section 804 (a) of those rules provides in relevant part: "A declarant is considered to be unavailable as a witness if the declarant: (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies; (2) refuses to testify about the subject matter despite a court order to do so; (3) testifies to not remembering the subject matter; (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . [the declarant's attendance and/or testimony]." Fed. R. Evid. 804 (a).

[12] Indeed, the state conceded at oral argument before this court that, at least under the circumstances of this case, the term disappeared and the phrase "has . . . become disabled" are synonymous.

[13] "[T]here is no helpful [legislative] history pinpointing the intent of the legislature in enacting § 54-56b . . . ." *State* v. *Talton*, 209 Conn. 133, 141, 547 A.2d 543 (1988).

[14] At oral argument before this court, the state argued that even if the material witness was an adult, the fact that the witness was beyond the

reach of state's ability to compel attendance at trial, the statutory exception would still be satisfied. Thus, the state's argument does not truly turn on the fact that the children lack the legal ability to decide to return to the United States and testify in this matter. Moreover, there is nothing in this record, including any representation by the state, that the children wish to testify in this case and that their mother is the sole impediment to obtaining their testimony.

-------------------------------------------