******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

STATE OF CONNECTICUT *v.* CHARLES ARTIS
(AC 46522)

Elgo, Seeley and Bishop, Js.

*Syllabus*

Convicted, following a plea of guilty, of the crime of manslaughter in the first degree, the defendant appealed, claiming that the trial court erred in failing to inform him, before accepting his plea, that he would be not eligible to accumulate risk reduction credits to reduce his sentence pursuant to statute (§ 18-98e) and, thus, his plea was not knowingly or voluntarily made. The defendant requested, as a remedy, that this court provide him with eligibility to earn those credits. *Held*:

This court was unable to provide the defendant with the relief he requested, as it was not within the authority of this court to amend § 18-98e, which expressly provides that any person sentenced for manslaughter in the first degree is ineligible to earn risk reduction credits.

Argued September 18, 2024—officially released January 7, 2025

*Procedural History*

Information charging the defendant with the crime of manslaughter in the first degree, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, where the defendant was presented to the court, *Iannotti, J.*, on a plea of guilty; judgment of guilty in accordance with the plea, from which the defendant appealed to this court. *Affirmed.*

*Mary Boehlert*, assigned counsel, for the appellant (defendant).

*Alexander A. Kambanis*, deputy assistant state's attorney, with whom, on the brief, were *John P. Doyle*, state's attorney, and *David J. Strollo*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. On December 15, 2022, the defendant, Charles Artis, pleaded guilty, in two separate dockets,

to the crimes of manslaughter in the first degree in violation of General Statutes § 53a-55[1] and evading responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (a).[2] Additionally, the defendant admitted to violating his probation.[3] These pleas and admission were entered pursuant to a plea bargain with the state containing an agreed upon sentence of twenty years of incarceration, execution suspended after fifteen years, followed by five years of probation with the right to argue for a lesser sentence. Before accepting the pleas and admission, the court canvassed the defendant and, after doing so, found that

[1] General Statutes § 53a-55 provides: "(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection; or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.

"(b) Manslaughter in the first degree is a class B felony."

[2] General Statutes § 14-224 (a) provides: "Each operator of a motor vehicle who is knowingly involved in an accident which results in the death of any other person shall at once stop and render such assistance as may be needed and shall give such operator's name, address and operator's license number and registration number to any officer or witness to the death of any person, and if such operator of the motor vehicle causing the death of any person is unable to give such operator's name, address and operator's license number and registration number to any witness or officer, for any reason or cause, such operator shall immediately report such death of any person to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstances of the accident causing the death of any person and such operator's name, address, operator's license number and registration number."

[3] In 2021, the defendant previously pleaded guilty to violating a protective order and was sentenced to probation.

they were "knowing[ly] and voluntarily made [and that the defendant had been] assisted by competent counsel . . . ." When canvassing the defendant, the court did not inform him that the sentence to be imposed for his manslaughter conviction would make him ineligible to receive any risk reduction credits that could reduce his period of incarceration. See General Statutes § 18-98e.[4]

Thereafter, on February 16, 2023, the court sentenced the defendant to twenty years of incarceration, execution suspended after fourteen years, followed by five years of probation. At sentencing, the court stated that the defendant "may accumulate good time credits and may be eligible for parole at some point in time. That is not up to this court, that will be up to the Department of Correction if and when they believe [the defendant] should be eligible for any good time credits and/or parole." This direct appeal followed.

On appeal, the defendant claims that, before he entered his plea on the manslaughter charge, the court was required, in accordance with Practice Book § 39-19,[5] to inform him that, by statute, an individual convicted of manslaughter in the first degree is disqualified from earning any risk reduction credits toward a reduction of his sentence but failed to do so. He avers that

[4] General Statutes § 18-98e provides in relevant part: "(a) Notwithstanding any provision of the general statutes, any person sentenced to a term of imprisonment for a crime committed on or after October 1, 1994, and committed to the custody of the Commissioner of Correction on or after said date, *except a person sentenced for a violation of section* 53a-54a, 53a-54b, 53a-54c, 53a-54d, *53a-55*, 53a-55a, 53a-70a, 53a-70c or 53a-100aa, or is a persistent dangerous felony offender or persistent dangerous sexual offender pursuant to section 53a-40, may be eligible to earn risk reduction credit toward a reduction of such person's sentence, in an amount not to exceed five days per month, at the discretion of the Commissioner of Correction for conduct as provided in subsection (b) of this section occurring on or after April 1, 2006. . . ." (Emphasis added.)

[5] Practice Book § 39-19 provides in relevant part: "The judicial authority shall not accept [a] plea without first addressing the defendant personally and determining that he or she fully understands . . . (2) The mandatory minimum sentence, if any . . . ."

he "was not aware . . . when he pleaded guilty or at sentencing . . . that he was statutorily prohibited from being eligible to earn the good time credits because of the manslaughter charge" and that, consequently, his "sentence is akin to being a mandatory minimum," and his plea was not knowingly or voluntarily made. As a remedy for this, he requests that we "provide [him] with a right to earn good time credit on his manslaughter conviction" in accordance with the trial court's suggestion at his sentencing hearing that he "may accumulate good time credits," notwithstanding its inaccuracy.

It is not, however, within the authority of this court to amend § 18-98e, which expressly provides that any person sentenced for a violation of manslaughter in the first degree pursuant to § 53a-55 is ineligible to earn risk reduction credit toward a reduction of such person's sentence. See footnote 4 of this opinion. "It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." (Internal quotation marks omitted.) *State* v. *Richard P.*, 179 Conn. App. 676, 688, 181 A.3d 107, cert. denied, 328 Conn. 924, 181 A.3d 567 (2018). It is the role of the General Assembly to legislate and the role of the judiciary to adjudicate. For this court to accede to the defendant's request would amount to an invasion of the General Assembly's domain in violation of principles of separation of powers among the various branches of government. This we will not do. Stated simply, this court cannot provide the defendant with the only relief he requests and, therefore, we affirm the trial court's judgment on that basis.

To this end, we note that, in his principal appellate brief, the defendant broadly requests this court to "right the wrong of the trial court by finding that [his] guilty plea was not given knowingly, intelligently or voluntarily . . . and/or providing the defendant with the benefit of his bargain" by ordering that he may accumulate

risk reduction credits, but he does not seek to withdraw his guilty plea. His reply brief is equally silent in this regard. The record reflects, as well, that at no time in the trial court did the defendant seek to withdraw his guilty plea. Although counsel for the defendant shifted course during oral argument before this court by requesting this court to remand this case to the trial court and "let [the defendant] withdraw his guilty plea," "[i]t is well settled that claims on appeal must be adequately briefed, and cannot be raised for the first time at oral argument before the reviewing court." *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). The defendant has therefore abandoned this claim for relief. See id. In short, because the defendant does not seek to withdraw his guilty plea, we need not reach the question of whether an advisement regarding the unavailability of risk reduction credits is required pursuant to Practice Book § 39-19.[6]

The judgment is affirmed.

---

[6] In pursuit of his claim on appeal, the defendant cites to our decision in *State* v. *Peterson*, 51 Conn. App. 645, 654–58, 725 A.2d 333, cert. denied, 248 Conn. 905, 731 A.2d 310 (1999), in which this court opined that the trial court's failure to inform the defendant, during his plea, of the mandatory minimum sentence required by the statute under which the defendant was pleading guilty, could form the basis for permitting a defendant to withdraw his guilty plea on grounds that the plea agreement was not knowingly and voluntarily made, provided other specified conditions were satisfied. Although there are similarities between a requirement that a defendant be informed of the mandatory minimum sentence he will face upon conviction and the fact that such a conviction will render him ineligible to receive any benefit from the risk reduction program, we need not decide, in this matter, whether the two situations are analogous because this case comes to us in a wholly different posture. Specifically, the defendant in *Peterson*, unlike the defendant in the matter at hand, was seeking to withdraw his guilty plea.